**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF CONNECTICUT**

GLYNIS GIBSON,

Plaintiff,

v.

ACCESS HEALTH CONNECTICUT

Defendant.

**COMPLAINT**

Civ. No. 20-1235

Plaintiff, GLYNIS GIBSON, ("Plaintiff"), by and through her undersigned counsel, EISENBERG & BAUM, LLP, hereby sues Defendant, ACCESS HEALTH CONNECTICUT ("Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, Glynis Gibson, an individual who is deaf, brings this action for declaratory, equitable and injunctive relief, and for compensatory damages, against Defendant, Access Health Connecticut. Defendant discriminated against Ms. Gibson on multiple occasions by refusing to accept her calls to obtain information regarding her own health insurance plan. Defendant's conduct violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and other state and common law causes of action.

**THE PARTIES**

2. Plaintiff, GLYNIS GIBSON ("Plaintiff"), brings this action an individual residing at 77 McQuillan Street, Stratford, CT 06614. Plaintiff is a profoundly deaf individual who primarily communicates in American Sign Language ("ASL")[1], she is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state anti-discrimination laws.

3. Defendant, ACCESS HEALTH CONNECTICUT ("Defendant") is a quasi-governmental corporate entity created by the legislature of the State of Connecticut as a Health Insurance Marketplace pursuant to and to satisfy the requirements of the Affordable Care Act. Access Health Connecticut is responsible for, *inter alia*, making available qualified health plans to Connecticut residents and certifying the individuals who are exempt from the requirements of the individual mandate.

**JURISDICTION & VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant has sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced, and the acts and omissions giving rise to this Complaint occurred within this District.

**STATEMENT OF FACTS**

---

[1] ASL is a visual, three-dimensional, non-linear language, and its grammar and syntax differ from the grammar and syntax of English and other spoken languages." *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1105 (9th Cir. 2010). "In many cases, there is no one-to-one correspondence between signs in ASL and words in the English language." *Id.*

6. Plaintiff is a profoundly deaf individual who communicates primarily in ASL.

7. Through Defendant's services, Plaintiff obtained a family health insurance plan that included her minor son, Frank Dorsey, and her husband, Ely Dorsey.

8. Plaintiff is the primary policyholder of the obtained insurance plan.

9. Video Relay Service ("VRS") is a form of Telecommunications Relay Service ("TRS"), regulated by the Federal Communications Commission ("FCC"). According to the FCC, VRS works as follows: "[t]he VRS caller, using a television or a computer with a video camera device and a broadband (high speed) Internet connection, contacts a VRS [communications assistant ("CA")], who is a qualified sign language interpreter. They communicate with each other in sign language through a video link. The VRS CA then places a telephone call to the party the VRS user wishes to call. The VRS CA relays the conversation back and forth between the parties -- in sign language with the VRS user, and by voice with the called party. No typing or text is involved." See Federal Communications Commission, Video Relay Services, available at http://www.fcc.gov/guides/video-relay-services.

10. The FCC has promulgated regulations requiring CAs to maintain strictly confidential any information exchanged during relay calls and prohibiting CAs from changing the content of the message in any manner. *See* 47 C.F.R. § 64.604(a).

11. In May 2019, Plaintiff called Defendant to inquire about health insurance coverage for her minor son under her current family insurance plan.

12. Because Plaintiff is deaf, Plaintiff cannot hear and communicate via a standard voice telephone. Accordingly, Plaintiff attempted to call Defendant using VRS.

13. Rather than accommodate Plaintiff's disability and communicate with her using VRS, Defendant's employee and the employee's supervisor refused to communicate with Plaintiff and

informed Plaintiff that Defendant can only communicate with Plaintiff through the use of a teletypewriter ("TTY").

14. A TTY is a device that uses the electronic transmission of text to allow deaf persons to communicate via telephone with (i) deaf or hearing persons who have access to a TTY or (ii) hearing persons who do not have access to a TTY but who are connected via a third party relay service. *See Clarkson v. Coughlin,* 898 F. Supp. 1019, 1027 (S.D.N.Y. 1995).

15. Plaintiff no longer has or uses a TTY, which is now considered antiquated technology. Instead, Plaintiff, along with the majority of the deaf community use VRS. VRS allows telephone conversations to flow in real time and in a more natural manner than text-based TTY conversations and has become the preferred and most effective type of relay service for most deaf and hard of hearing individuals who use ASL.

16. Plaintiff explained to Defendant's employees that Plaintiff does not own or have access to a TTY device and requested to communicate through VRS.

17. Despite this request, Defendant refused to accommodate and further communicate with Plaintiff.

18. As a result of Defendant's actions, Plaintiff was unable to obtain information about her family health insurance plan.

19. In June 2019, Plaintiff called Defendant through VRS to inquire about health insurance coverage for her husband under her current family insurance plan.

20. Defendant again refused to accept Plaintiff's call and again informed Plaintiff that Defendant will only communicate with Plaintiff through the use of a TTY.

21. Plaintiff again explained to Defendant's employees that Plaintiff does not own or have access to a TTY device and again requested to communicated through VRS.

22. Despite this repeated request, Defendant refused to accommodate and further communicate with Plaintiff.

23. As a result of Defendant's actions, Plaintiff was again unable to obtain information about her family health insurance plan.

24. As a result of the Defendant's failure to provide services to Plaintiff through a VRS, she was unable to enjoy the benefits and services provided by Defendant, experienced frustration, anxiety, humiliation and anger, as well as emotional distress.

25. Plaintiff intends to continue to use Defendant's services, if Defendant will enable communication through the use of VRS CAs.

26. Based on Plaintiff's allegations herein, it is evident that Defendant has failed to implement policies and to train its employees and staff regarding the civil rights and communication needs of deaf individuals to ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from Defendant's services.

## COUNT I: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

27. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

28. At all times relevant to this action, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

29. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the Defendant's conduct.

30. At all times relevant to this action, Plaintiff has been substantially limited in the major

life activities of "hearing" and "speaking" and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

31. Defendant, is a public entity as defined under Title II of the ADA, 42 U.S.C. § 12131(1).

32. Defendant is vicariously liable for the actions of its employees and agents under a theory of *respondeat superior*, and is directly liable for its failure to train employees and agents and its failure to implement or modify policies to ensure compliance with the ADA.

33. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

34. Federal Regulations implementing Title II of the ADA state that a public entity may not

"(i) [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) [p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1)(i)–(iii).

35. Federal Regulations implementing Title II of the ADA state that a public entity "shall

take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

36. Federal Regulations implementing Title II of the ADA state that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary," and "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(1)–(2).

37. When choosing an aid or service, Title II entities are ***required*** to give primary consideration to the choice of aid or service requested by the person who has a communication disability." 28 C.F.R. § 35.164. (emphasis in original).

38. "The state or local government must honor the person's choice, unless it can demonstrate that another equally effective means of communication is available, or that the use of the means chosen would result in a fundamental alteration or in an undue burden . . . ." 28 C.F.R. § 35.164.

39. Defendant discriminated against Plaintiff on the basis of his disability in violation of Title II of the ADA and its implementing regulations.

40. Defendant discriminated against Plaintiff on the basis of disability by excluding her from participation in and denying her the benefits of their services, and by subjecting her to discrimination, in violation of the ADA.

41. Defendant's failure to provide effective communication to Plaintiff denied her the same

access to Defendant's services, benefits, activities, programs, or privileges as the access provided to hearing individuals.

42. Defendant, has failed to implement policies, procedures, and training of its employees necessary to ensure compliance with Title II of the ADA and its implementing regulations.

43. Defendant's violation of Plaintiff's rights under the ADA caused her to suffer from discrimination, unequal treatment, and exclusion.

44. Plaintiff is therefore entitled to compensatory damages, injunctive relief, as well as an award of attorneys' fees,

costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12133.

**COUNT II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

45. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

46. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

47. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking within the meaning of 45 C.F.R. § 84.3(j), and accordingly, he is individual with a disability as defined under 29 U.S.C. § 708(20)(B).

48. At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance under 29 U.S.C. § 794(b).

49. Section 504 of the Rehabilitation Act provides that no "otherwise qualified individual

with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

50. Defendant discriminated against Plaintiff solely on the basis of his disability by denying her meaningful access to the services, programs, and benefits Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 504 of the Rehabilitation Act.

51. Defendant further discriminated against Plaintiff by failing to train its employees to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the Rehabilitation Act.

52. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the Rehabilitation Act, 29 U.S.C. § 794.

**COUNT III: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT**

53. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

54. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("ACA") and its implementing regulations 45 C.F.R. Part 92 et seq. have been in full force and effect and applied to the Defendant's conduct. 42 U.S.C. § 18116; 45 C.F.R. Part 92 et seq.

55. At all times relevant to this action, Plaintiff has had substantial limitations to the major

life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

56. At all times relevant to this action, Plaintiff's primary language for communication has been American Sign Language (and not English), and Plaintiff has had limited ability to read, write, speak, or understand English. Plaintiff has therefore been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 45 C.F.R. § 92.101.

57. Section 1557 of the ACA applies to "any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance." 42 U.S.C. 18116(a). It also applies to "any program or activity that is administered by an Executive Agency or any entity established under" Title 42. Therefore, at all times relevant to this action, Defendant is engaged in a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

58. Pursuant to Section 1557 of the ACA "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. §18116.

59. Pursuant to 45 C.F.R. §92.102, "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 CFR 35.160 through 35.164. Where the regulatory provisions referenced in this section use the term "public entity," the term "covered entity" shall apply in its place." 45 C.F.R. §92.102 (a)

60. Pursuant to 45 C.F.R. §92.105, "[a] covered entity shall make reasonable modifications to policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability . . the term reasonable modifications shall be interpreted . . . as set forth in the ADA Title II regulation." 45 C.F.R. §92.105.

61. Pursuant to 45 C.F.R. §92.2, a covered entity shall not exclude from participation in, deny the benefits of, or otherwise discriminate against an individual or entity in its health programs or activities on the basis of the race, color, national origin, sex, age, or disability of an individual with whom the individual or entity is known or believed to have a relationship or association. 45 C.F.R. §92.2

62. As set forth above, Defendants discriminated against Plaintiff, on the basis of disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

63. The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

64. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

65. Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully pray that this Court grant the following relief:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title II of the Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

B. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals' meaningful access to and full and equal enjoyment of Defendant's facilities, services or programs;

C. Order Defendant:

i. to develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate against Plaintiff and other individuals who are deaf and hard of hearing.

ii. Order Defendant to respond to calls placed through relay services by Plaintiff or other deaf or hard of hearing individuals in the same manner that they respond to other calls, and to place calls through relay services to Plaintiff or other deaf or hard of hearing individuals in the equal manner that they place other calls.

iii. Order Defendant to implement an appropriate training program for Defendant's employees about Plaintiff's rights, the rights of other individuals who are deaf, and about Defendant's policy and procedures for providing access to its customers.

D. Award to Plaintiff:

i. Compensatory damages pursuant to the ACA, ADA and Section 504 of the Rehabilitation Act;

ii. Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, and the ACA;

iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

iv. Any and all other relief that this Court finds necessary and appropriate.

Respectfully submitted,

EISENBERG & BAUM, LLP

By: ____________________________

Andrew Rozynski, Esq. (ct30622)
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700
ARozynski@eandblaw.com
*Attorneys for Plaintiff*